1   ROBBINS UMEDA LLP
2   MARC M. UMEDA (197847)
    mumeda@robbinsumeda.com
3   GEORGE C. AGUILAR (126535)
    gaguilar@robbinsumeda.com
    600 B Street, Suite 1900
4   San Diego, California 92101
    Telephone: (619) 525-3990
5   Facsimile: (619) 525-3991

6   GARDY & NOTIS, LLP
    MARK C. GARDY
7   mgardy@gardylaw.com
    JENNIFER SARNELLI
8   jsarnelli@gardylaw.com
    KELLY A. NOTO
9   knoto@gardylaw.com
    560 Sylvan Avenue
10  Englewood Cliffs, NJ 07632
    Telephone: (201) 567-7377
11  Facsimile: (201) 567-7337

12  Co-Lead Counsel for Plaintiffs

13

14              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
15                  SAN JOSE DIVISION

16  IN RE CELERA CORP. DERIVATIVE      )   Case No. C 10-02935 JW
    LITIG.                             )
17                                     )   **PLAINTIFFS' OPPOSITION**
    _____)   **TO THE INDIVIDUAL**
18  This Document Relates To:          )   **DEFENDANTS' MOTION TO**
                                       )   **DISMISS PLAINTIFFS'**
19          ALL ACTIONS                )   **CONSOLIDATED VERIFIED**
                                       )   **COMPLAINT**
20                                     )
                                       )
21                                     )
                                       )
22                                     )   **Hearing Date: April 11, 2011**
                                       )   **Hearing Time: 9:00 a.m.**
23                                     )
                                       )   **Judge: Hon. James Ware**
24  _____)   **Courtroom: 8, 4th Floor**

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...........................................................................................................1

II.     STATEMENT OF ISSUES (CIVIL L.R. 7-4(A)(3)) ....................................................2

III.    STATEMENT OF FACTS ............................................................................................3

        A.      The Parties ........................................................................................................3

                1.      Plaintiffs..............................................................................................3

                2.      Nominal Defendant, Celera ................................................................3

                3.      The Individual Defendants..................................................................4

        B.      Background........................................................................................................4

        C.      Plaintiffs' Claims...............................................................................................5

IV.     ARGUMENT ..............................................................................................................6

        A.      Applicable Pleading Standard...........................................................................6

                1.      Plaintiffs Need Only Satisfy a Rule 8 Pleading Standard...........................6

                2.      Plaintiffs Do Not Need to Satisfy a Rule 9(b) Pleading Standard ..............7

        B.      Plaintiffs Adequately Plead All Causes of Action...................................................9

                1.      Plaintiffs Sufficiently Plead Breaches of the Fiduciary Duties of
                        Loyalty, Good Faith, and Due Care.........................................................9

                2.      Plaintiffs' Sufficiently Plead a Cause of Action for Unjust
                        Enrichment................................................................................14

        C.      Plaintiffs Have Adequately Alleged That the Individual Defendants
                Caused Damage to the Company.........................................................15

V.      CONCLUSION...................................................................................16

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

*Cinerama, Inc. v. Technicolor, Inc.*,
     663 A.2d 1156 (Del. 1995) ................................................................................ 9

5

*Concha v. London*,
     62 F.3d 1493 (9th Cir. 1995) ........................................................................... 8

6

7

*DCB Constr. Co. v. Cent. City Dev. Co.*,
     965 P.2d 115 (Colo. 1998)............................................................................... 15

8

*Emerald Partners v. Berlin*,
     726 A.2d 1215 (Del. 1999) ............................................................................. 13

9

10

*F.T.C. v. Swish Marketing*,
     No. C 09-03814 RS, 2010 WL 653486 (N.D. Cal. Feb. 22, 2010).................... 7

11

*Gaff v. Fed. Deposit Ins. Corp.*,
     828 F.2d 1145 (6th Cir. 1987) ....................................................................... 15

12

13

*Gilligan v. Jamco Dev. Corp.*,
     108 F.3d 246 (9th Cir. 1997) ........................................................................... 7

14

*Gomez v. Toledo*,
     446 U.S. 635 (1980) ...................................................................................... 14

15

16

*Grace v. Morgan*,
     No. 03C05260JEB, 2004 WL 26858 (Del. Super. Ct. Jan. 6, 2004) ............... 14

17

*Grobow v. Perot*,
     526 A.2d 914 (Del. Ch. 1987)........................................................................ 8

18

19

*Guth v. Loft, Inc.*,
     5 A.2d 503 (Del. 1939) ................................................................................... 9

20

*Heller v. Kiernan*,
     No. 1484-K, 2002 WL 385545 (Del. Ch. Feb. 27, 2002),
     *aff'd*, 806 A.2d 164 (Del. 2002) ..................................................................... 9

21

22

*In re Abbott Labs Derivative S'Holders Litig.*,
     325 F.3d 795 (7th Cir. 2003) ...................................................................... 13, 14

23

*In re Biopure Corp. Derivative Litig.*,
     424 F. Supp. 2d 305 (D. Mass. 2006) ............................................................. 11

24

25

*In re Cendant Corp. Derivative Action Litig.*,
     189 F.R.D. 117 (D.N.J. 1999)..................................................................... 11, 15

26

*In re Countrywide Fin. Corp. Derivative Litig.*,
     554 F. Supp. 2d 1044 (C.D. Cal. 2008) ........................................................ 10, 12

27

28

*In re Countrywide Fin. Corp. Sec. Litig.*,
    No. CV-07-05295-MRP, 2008 WL 5100124 (C.D. Cal. Dec. 1, 2008) ........................... 11

*In re Cray Inc. Derivative Litig.*,
    431 F. Supp. 2d 1114 (W.D. Wash. 2006) .......................................................................... 8

*In re Healthsouth Corp. S'holders Litig.*,
    845 A.2d 1096 (Del. Ch. 2003) ......................................................................................... 15

*In re Keyspan Corp. Sec. Litig.*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) .............................................................................. 11

*In re New Valley Corp.*,
    No. 17649, 2001 WL 50212 (Del. Ch. Jan. 11, 2001) ...................................................... 11

*In re Prison Realty Sec. Litig.*,
    117 F. Supp. 2d 681 (M.D. Tenn. 2000) ............................................................................. 8

*In re Sunrise Sec. Litig.*,
    916 F.2d 874 (3d Cir. 1990) ............................................................................................. 15

*In re Tower Air, Inc.*,
    416 F.3d 229 (Del. 2005) .............................................................................................. 6, 14

*Iotex Commc'ns, Inc. v. Defries*,
    No. 15817, 1998 WL 914265 (Del. Ch. Dec. 21, 1998) .............................................. 11, 13

*Malone v. Bricat*,
    722 A.2d 5 (Del. 1998) .................................................................................................. 9, 14

*McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*,
    339 F.3d 1087 (9th Cir. 2003) ......................................................................................... 14

*McMullin v. Beran*,
    756 A.2d 910 (Del. 2000) ................................................................................................... 9

*Pereira v. Cogan*,
    294 B.R. 449 (S.D.N.Y. 2003) ........................................................................................ 13

*Schock v. Nash*,
    732 A.2d 217 (Del. 1999) ........................................................................................... 14, 15

*South Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ........................................................................................... 11

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ........................................................................................................... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007) ..................................................................................................... 11

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................................................... 7

*Weiss v. Swanson,*
        948 A.2d 433 (Del. Ch. 2008)..................................................................... 8, 11, 13

*Williamson Oil Co. v. Philip Morris USA,*
        346 F.3d 1287 (11th Cir. 2003) ..................................................................... 15

*Wool v. Tandem Computers, Inc.,*
        818 F.2d 1433 (9th Cir. 1987) ........................................................................ 8

*Zatkin v. Primuth,*
        551 F. Supp. 39 (S.D. Cal. 1982) ................................................................... 8

**STATUTES**

Delaware Code Annotated
        Title 8, §102(b)(7)......................................................................................... 13

Federal Rules of Civil Procedure
        Rule 8 ......................................................................................... 2, 6, 7, 8
        Rule 9(b) ...................................................................................... 1, 7, 8

Plaintiffs Alan R. Kahn ("Kahn") and Betty Greenberg ("Greenberg") ("Plaintiffs"), respectfully submit this opposition to the motion to dismiss this action filed by defendants Kathy Ordonez ("Ordonez"), Ugo DeBlasi ("DeBlasi"), Joel R. Jung ("Jung"), Richard A. Ayers ("Ayers"), Jean-Luc Bélingard ("Bélingard"), William G. Green ("Green"), Peter Barton Hutt ("Hutt"), Gail K. Naughton ("Naughton"), Wayne I. Roe ("Roe"), and Bennett M. Shapiro ("Shapiro") (the "Individual Defendants").

## I.    INTRODUCTION

Plaintiffs brought the instant shareholder derivative action on behalf of nominal defendant Celera Corporation ("Celera" or the "Company") to recover damages inflicted upon the Company by the Individual Defendants – Celera's officers and directors who subjected the Company to multiple lawsuits and United States Securities and Exchange Commission ("SEC") inquiries, which have left Celera exposed to millions of dollars in losses, and ultimately decimated the Company's market capitalization by approximately $826 million, to a price 63% lower than its high at the beginning of the Relevant Time Period.  ¶13.[1]  The Individual Defendants have wrongly attempted to scrutinize Plaintiffs' claims using the heightened, Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)") pleading standard applicable to fraud claims that are *not* applicable to Plaintiffs Delaware state law[2] claims for breach of fiduciary duty and unjust enrichment.   In repeatedly citing to class action securities opinions – not derivative actions or similar actions alleging breach of fiduciary duty – the Individual Defendants' have attempted to increase Plaintiffs'

---

[1]  Unless otherwise noted, all paragraph references ("¶__" or "¶¶__") refer to Plaintiffs' Consolidated Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment (the "Complaint), filed on October 15, 2010 [Dkt. No. 16].  All references to "Ind. Defs.' Mem. at ___" refer to Individual Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Consolidated Verified Complaint; Memorandum of Points and Authorities in Support Thereof, filed on January 18, 2011 [Dkt. No. 30].

[2]  As the Individual Defendants recognized, "Celera is a Delaware corporation (Compl. ¶22.) Delaware law therefore supplies the substantive standard for Plaintiffs' claims."  Ind. Defs.' Mem. at 9 n.10.

burden; an untenable and unavailing legal position.  Indeed, Plaintiffs' breach of fiduciary duty and unjust enrichment claims carry nothing more than a Rule 8 of the Federal Rules of Civil Procedure ("Rule 8") pleading standard, which Plaintiffs have overwhelmingly satisfied in their 52-page Complaint.   Plaintiffs' simple and straightforward derivative claims should not be lost in federal securities laws claims replete with heightened pleading standards and the irrelevant procedural complexities – that are already being litigated in a separate, securities class action lawsuit – and simply do not apply to the state law derivative claims asserted on behalf of the Company here.

Also contrary to the Individual Defendants assertions, Plaintiffs' allegations concerning the Individual Defendants' breaches of fiduciary duty are sufficiently alleged to survive the Individual Defendants' motion to dismiss.  As fiduciaries of Celera and its shareholders, the Individual Defendants are charged with knowledge of the financial health of the segment of the Company, operated through Berkeley HeartLab, Inc. ("BHL") that generated more than 60% of its revenue. ¶¶4, 74.  However, despite their knowledge of its actual financial health and debilitating bad debt expense, the Individual Defendants went to great pains to assure shareholders that Celera's Lab Services business would to continue to grow.  ¶¶42, 53, 60-62, 68-69.  However, even if the Individual Defendants had no actual knowledge of the Lab Services financial health, the fact that they were so flagrantly unaware of its fiscal reality invariably demonstrates that the Individual Defendants failed to properly monitor and control the business, also supporting breach of fiduciary duty claims against each of them.  The Individual Defendants were unjustly enriched as a result and Plaintiffs' respectfully submit that the Individual Defendants' motion to dismiss must be denied.

## II.     STATEMENT OF ISSUES (CIVIL L.R. 7-4(A)(3))

1.     Whether Plaintiffs Have Adequately Pled Their State Law Claims.

2.     Whether Plaintiffs' Claims are Required to Satisfy the Pleading Standard of Rule 9(b) of the Federal Rules of Civil Procedure.

### III.   STATEMENT OF FACTS

#### A.   The Parties

##### 1.   Plaintiffs

On July 2 and 9, 2010, respectively, Plaintiffs Kahn and Greenberg, shareholders of Celera, filed shareholder derivative actions on behalf of nominal defendant, Celera, against the Individual Defendants (collectively with Celera, the "Defendants"), seeking to remedy the Individual Defendants' violations of state law, including their breaches of fiduciary duties and unjust enrichment that occurred between April 24, 2008 and July 22, 2009 (the "Relevant Time Period") and caused, and will continue to cause, substantial losses to Celera, including damage to its reputation and goodwill. ¶¶1, 20-21.

On August 11, 2010 the Court entered an Order [Dkt. No. 7], relating Plaintiffs' actions to the securities class action litigation captioned, *In re Celera Corp. Sec. Litig.*, C 10-02604 JW (HRL) (N.D. Cal. Filed on June 14, 2010) (the "Securities Litigation"), and on September 23, 2010, the Court issued an Order consolidating Plaintiffs' actions into the instant action [Dkt. No. 13].

##### 2.   Nominal Defendant, Celera

Celera's shares once traded as a tracking stock when it was previously a wholly-owned subsidiary of Applera Corporation, now known as Applied Biosystems ("Applera"). ¶2. On July 1, 2008, however, Celera split-off from Applera and became an independent Company (the "Split-Off"). *Id.*

Celera is now a publicly traded Delaware corporation and is named in this complaint as a nominal defendant solely in a derivative capacity, and this shareholder derivative action is brought by Plaintiffs on its behalf. ¶22. Celera is a healthcare business that delivers personalized disease management through a combination of products and services. *Id.* Its business operates in three segments: (1) Lab Services; (2) Products; and (3) Corporate. ¶¶3, 22. Celera's Lab Services segment offers clinical laboratory tests and disease management services to healthcare providers to help physicians improve cardiovascular disease treatment and provide cardiovascular disease prevention services. ¶4. It is the most important division of the Company, accounting for over 60% of its revenue. ¶¶4, 74. The Lab Services segment is operated by BHL, a subsidiary of

- 3 -

Celera, which Celera acquired in October 2007. *Id.* This action arises out of the Individual Defendants' misleading statements concerning the Company's Lab Services segment during the Relevant Time Period, and the damage to the Company occurring as a result. *Id.*

### 3.    The Individual Defendants

Plaintiffs allege that defendants Ordonez, DeBlasi, Jung, Ayers, Bélingard, Green, Hutt, Naughton, Roe, and Shapiro: (i) made, reviewed or approved improper statements regarding Celera's allowance for losses, bad debt, and the amount of goodwill the Company carried, and earnings guidance; (ii) made, reviewed or approved improper statements in the Company's March 25, 2009 Form 10-KT regarding the Company's ability to bring additional business under contract, its accounts receivable, its goodwill, and its internal controls; (iii) reviewed and approved inadequate internal controls with respect to Celera's financial reporting; and (iv) were unjustly enriched by receiving undeserved compensation and directorial remuneration. ¶¶23-32.

### B.    Background

Throughout the Relevant Time Period, each of the Individual Defendants made or authorized false and misleading statements regarding Celera's allowance for losses, its bad debt expense, the amount of goodwill the Company carried, and its earnings guidance. ¶5. The Individual Defendants not only manipulated, but failed to correct, the Company's financial statements in an attempt to downplay BHL, the Lab Service segment's actual losses; losses the Individual Defendants were aware of or reckless in not properly identifying at the time the statements were issued. *Id.* Indeed, the Individual Defendants repeatedly assured investors that Celera could increase the amount of its Lab Services business that was under contract, which would make its ability to collect on its receivables more predictable and less costly and time consuming. ¶6. However, at the time they made these assurances, the Individual Defendants knew or were reckless in not knowing that the Lab Services segment was not and could not increase its business under contract, and that Celera had outstanding receivables that would never be collected, even from its contract customers. *Id.*

- 4 -

In particular, during the quarter ending June 30, 2008 (the beginning of the Relevant Time Period), the Individual Defendants caused the Company to record $4.3 million in losses, or bad debt expense, representing 10.1% of the Company's revenue for the quarter, a percentage above industry norms for a comparable lab services business of Celera's size. ¶7. Nearly one year later, on May 6, 2009, the Individual Defendants caused Celera to take a slightly increased bad debt expense of $5.9 million, representing 11.2% of its revenue for that period, a percentage still above industry norms. ¶8. In response to the increase, DeBlasi stated that the Company was "aggressively implementing measures to address these issues." *Id*. These announcements were bolstered by the additional public statements of defendants Ordonez, Jung, and DeBlasi, who repeatedly stated throughout the Relevant Time Period that they were "pleased" with the Lab Services segment; repeatedly concealed and intentionally downplayed Celera's actual bad debt expense and the amount of accounts receivable that were well overdue and known to be uncollectible; and mislead the public by stating that they had implemented "a concerted program to improve collections" for the Lab Services segment. ¶9. Indeed, just three months after these statements, Celera was forced to disclose that it would have to write off $20.1 million in bad debt, representing 48.6% of its revenue for the quarter ending June 27, 2009 – more than eight times the industry norm for a comparable Lab Services business of Celera's size. ¶¶70, 85. The Individual Defendants admitted that their previous earnings guidance for the Company was significantly overstated and that it would have to be lowered, and the Company reported that it would be forced to take a charge of $15.7 million from its goodwill, 94% of which came from BHL. ¶¶12, 88. Thereafter, on July 23, 2009, the Company's market capitalization declined by $826 million, to a price 63% lower than its September 18, 2008 high following the Split-Off. ¶13.

## C.    Plaintiffs' Claims

Plaintiffs' claims for breach of fiduciary duty and unjust enrichment and arise from the Individual Defendants' material misstatements and omissions concerning Celera's Lab Services business and financial results during the Relevant Time Period. ¶¶52-56, 58-63, 67-68. By reason of their positions as officers and directors of the Company, and in accordance with applicable law,

the Individual Defendants' had and continue to have a fiduciary duty to act in good faith in controlling, managing, overseeing, and directing the business, operations and management of Celera to ensure that their operations and activities were and are in full compliance with federal and state laws and regulations. ¶¶34-39. Plaintiffs' allege that the Individual Defendants failed to act in good faith throughout the Relevant Time Period and permitted the improper statements described herein to be publicly disclosed and remain un-remedied for more than a year. ¶¶69-70, 91. Although armed with knowledge of or access to the facts concerning the Company's Lab Services contracts, its existing bad debt, and its available reserves for bad debt, Plaintiffs also allege that the Individual Defendants did not take any effective steps, prior to the July 22, 2009 corrective disclosure, to ensure that Celera was in full compliance with all relevant securities laws. ¶93. Plaintiffs' further allege that, in violation of their fiduciary duties, the Individual Defendants caused and permitted Celera to issue false and misleading information, conduct that involved a knowing, culpable, or reckless violation of their obligations as directors of Celera, an absence of good faith on their part, and a blatant disregard for their duties to the Company and its shareholders. ¶94. As a result, Plaintiffs claim that the Individual Defendants' improper conduct has caused and will continue to cause damage to Celera and its public shareholders, including loss of its reputation and goodwill, as well as the causing Celera and its public shareholders to bear the financial burdens associated with the pending Securities Litigation emanating solely from the Individual Defendants' improper conduct. ¶¶14, 101-10.

## IV.   ARGUMENT

### A.   Applicable Pleading Standard

#### 1.   Plaintiffs Need Only Satisfy a Rule 8 Pleading Standard

To survive a Federal Rules of Civil Procedure, Rule 12(b)(6) motion for failure to state a claim, Plaintiffs need only satisfy Rule 8. *In re Tower Air, Inc.*, 416 F.3d 229, 238 (Del. 2005). The purpose of Rule 8 is to "'give the defendant fair notice of what the plaintiff[s'] claim is and the

grounds upon which it rests.'"[3]  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).  Moreover, "[t]he Rule 8 standard contains 'a powerful presumption against rejecting pleadings for failure to state a claim.'"  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Here, the Complaint clearly gives Defendants more than "fair notice" of Plaintiffs' Delaware state law breach of fiduciary duty and unjust enrichment claims and the grounds upon which they rest.  Thus, Defendants' motion to dismiss for failure to state a claim must be denied.

### 2. Plaintiffs Do Not Need to Satisfy a Rule 9(b) Pleading Standard

Contrary to Individual Defendants' assertions (Ind. Defs.' Mem. at 2-9), Plaintiffs' burden here is not to prove fraud or wrongdoing (such as actual violations of the securities laws), that is the purpose of the Securities Litigation.  Instead, Plaintiffs' claims arise from the Individual Defendants' alleged breaches of fiduciary duties and unjust enrichment – not fraud.  Thus, the Individual Defendants' contention that Plaintiffs' claims "sound in fraud" and are therefore subject to the heightened pleading requirements of Rule 9(b), is plainly incorrect.  *Id.*  Indeed, the Individual Defendants fail to cite any case in which derivative claims for breach of fiduciary duty and unjust enrichment were scrutinized using a Rule 9(b) pleading standard, and cite almost exclusively securities class action authorities asserting federal securities claims that Plaintiffs' do not assert here.[4]  Ind. Defs.' Mem. at 2-9.  Indeed, in another derivative action the Individual Defendants cite elsewhere in their brief (cited for a different proposition), the court specifically held that the plaintiff's "breach of duty of care, mismanagement, and waste claims are not subject to

---

[3] Here, as throughout, all emphasis is deemed added and citations omitted unless otherwise noted.

[4] The two cases cited which relate to derivative actions do not support the Individual Defendants' argument or stand for the propositions they suggest.  In *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003), the Court specifically held that, "[t]o the extent that Vess does not aver fraud, however, his allegations need not satisfy Rule 9(b)."  In addition, the court in *F.T.C. v. Swish Marketing*, No. C 09-03814 RS, 2010 WL 653486, at *11 (N.D. Cal. Feb. 22, 2010), did not decide the motion under Rule 9(b), rather, dismissed it for failure to meet the Rule 8 pleading standard.

Rule 9(b) and do not fail in their entirety as the Individual Defendants contend." *In re Cray Inc. Derivative Litig.*, 431 F. Supp. 2d 1114, 1129-30 (W.D. Wash. 2006).

Further, it is well-settled under Delaware law that a breach of fiduciary duty claim may be averred generally, and that there is no requirement whatsoever that a plaintiff allege "scienter." *Grobow v. Perot*, 526 A.2d 914, 921 (Del. Ch. 1987). Contrary to Individual Defendants' assertions, even though claims for breach of fiduciary duty, at their core, charge that the defendants "knew something," they may still be averred generally. *Weiss v. Swanson,* 948 A.2d 433, 449 n. 60 (Del. Ch. 2008).

Nevertheless, even assuming *arguendo* that Plaintiffs must plead all of their claims with particularity under Rule 9(b), Plaintiffs have easily met those heightened pleading requirements, as demonstrated herein. The particularity requirement of Rule 9(b) must "be read in conjunction with Rule 8 (a)(2) of the Federal Rules of Civil Procedure, which requires a short and plain statement of a claim. Also Rule 9(b) does not require plaintiffs to plead detailed evidentiary matters." *In re Prison Realty Sec. Litig.*, 117 F. Supp. 2d 681, 686 (M.D. Tenn. 2000); s*ee also Zatkin v. Primuth*, 551 F. Supp. 39, 42 (S.D. Cal. 1982) ("The Ninth Circuit has consistently taken the approach of reading the two rules in conjunction.").[5] Furthermore, Rule 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Thus, even a cursory review of Plaintiffs' Complaint reveals that rather than broad and conclusory statements of wrongdoing, Plaintiffs allege with sufficient particularity specific details regarding the wrongdoings that occurred at Celera, including the inadequate internal controls for billing and collection practices; inadequate allowance for bad debt expense; and each of the false statements that failed to address the actual business practices and financial health of Celera's Lab Services segment. Accordingly, the Individual Defendants' motion should be denied.

---

[5] Additionally, Rule 9(b) may be relaxed considering that all evidence is in Defendants' exclusive possession, and therefore, "the circumstances surrounding alleged breaches of fiduciary duty may frequently defy particularized identification at the pleading stage." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). *See also Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987).

### B.    Plaintiffs Adequately Plead All Causes of Action

#### 1.    Plaintiffs Sufficiently Plead Breaches of the Fiduciary Duties of Loyalty, Good Faith, and Due Care

Under Delaware law, the elements of breach of fiduciary duty are: (i) that a fiduciary duty exists; and (ii) that a fiduciary breached that duty." *See Heller v. Kiernan*, No. 1484-K, 2002 WL 385545, at *3 (Del. Ch. Feb. 27, 2002), *aff'd*, 806 A.2d 164 (Del. 2002).

It is beyond dispute that each of the Individual Defendants, as an officer or director of Celera, was a fiduciary of the Company, owing the Company and its shareholders the duties of due care, loyalty, and good faith. *McMullin v. Beran*, 756 A.2d 910, 918 (Del. 2000) (a board of directors owes fiduciary duties of care, loyalty and good faith to all of the company's shareholders); *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939) ("directors' and officers' fiduciary duties include not only "affirmatively … protect[ing] the interests of the corporation, …but also … refrain[ing] from doing anything that would work injury to the corporation, or to deprive it of profit or advantage which his skill and ability might properly bring to it …"). Indeed, officers or directors must satisfy all three duties under Delaware law. *See, e.g., Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156 (Del. 1995).

To fulfill these fiduciary duties, officers and directors must ensure that the corporation disseminates truthful and accurate information to shareholders. *Malone v. Bricat*, 722 A.2d 5, 10 (Del. 1998).

> Whenever directors communicate publicly or directly with shareholders about the corporation's affairs, with or without a request for shareholder action, directors have a fiduciary duty to shareholders to exercise due care, good faith and loyalty. It follows *a fortiori* that when directors communicate publicly or directly with shareholders about corporate matters the *sine qua non* of directors' fiduciary duty to shareholders is honesty.

*Id*. Furthermore:

> When the directors are not seeking shareholder action, but are deliberately misinforming shareholders about the business of the corporation, either directly or by a public statement, there is a violation of fiduciary duty. That violation may result in a derivative claim on behalf of the corporation or a cause of action for damages.

1    *Id*. at 14.

2        The Individual Defendants consciously and deliberately ignored red flags regarding the

3    financial health of Celera's Lab Services business and its failure to collect its long-outstanding bad

4    debts and, instead, repeatedly told shareholders throughout the Relevant Time Period that the Lab

5    Services segment was growing and misrepresented the amount of bad debt and goodwill.  ¶¶53-56,

6    58-63, 68.  Specifically, this included Celera's reporting in August 2009 its explosion of bad debt

7    expense of $20.1 million which quadrupled from the prior quarter and prior year, and the write-off

8    of $15.7 million in goodwill.  ¶¶10, 12, 70, 85.  Further, the Individual Defendants had specific

9    knowledge of the potential billing issues and risks associated with third-party payors, as well as

10   patients who were receiving reimbursements from BCBS (Blue Cross/Blue Shield) rather than the

11   money going directly to BHL, and these risks were not disclosed.  ¶¶55, 59, 62, 69-70, 76, 81-83.

12   Plaintiffs also alleged that defendants Ordonez, Jung, Ayers, and Bélingard were aware of the risk

13   factors, related to its billing procedures, as shown by their signatures on Celera's February 28, 2008

14   registration statement, as well the April 10, 2008, Form S-1/A registration statement, and the

15   removal of the risk factor due to SEC comments letters.  ¶¶77-80.   Indeed, although the Individual

16   Defendants denigrate Plaintiffs' allegations of wrongdoing and officer and director knowledge of

17   Celera's Lab Services segment's actual financial health (and their improper statements to the

18   contrary), as too generalized (*see* Ind. Defs.' Mem. at 2-9), Celera's Lab Services segment, operated

19   by BHL, is the most important division of the company, accounting for over 60% of the Company's

20   revenue (¶¶4, 74), and courts repeatedly infer knowledge on the part of officers and directors where

21   a complaint's allegations concern the company's primary product or service.

22        Recent decisions in this Circuit have held that knowledge of facts critical to a business' core

23   operations may be inferred to directors and officers.  *See In re Countrywide Fin. Corp. Derivative*

24   *Litig.*, 554 F. Supp. 2d 1044, 1057-71 (C.D. Cal. 2008) (Court found that the allegations, when

25   taken together, raised a strong inference of knowledge on the part of key officers as well as both

26   inside and certain outside directors involving Countrywide's core mortgage-related operations.);

27

28

PLAINTIFFS' OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED VERIFIED COMPLAINT    CASE NO. CV 10-02935 JW

*South Ferry LP, No. 2 v. Killinger*,[6] 542 F.3d 776, 781, 784 (9th Cir. 2008) (Court held that, based on the Supreme Court's decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007), a strong inference of scienter on the part of officers is raised when the alleged wrongdoing involves the core operations of the company); *see also In re Countrywide Fin. Corp. Sec. Litig.*, No. CV-07-05295-MRP, 2008 WL 5100124, at *42-*45 (C.D. Cal. Dec. 1, 2008) (discussion of recent Ninth Circuit law regarding core-operations inference). Courts across the country have held the same. *See, e.g.*, *In re Biopure Corp. Derivative Litig.*, 424 F. Supp. 2d 305, 308 (D. Mass. 2006); *see also In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 387-88 (E.D.N.Y. 2003) (listing cases in which courts inferred defendants' knowledge of problems with a company's core product or most significant contract). Indeed, to adequately allege the basis of the Individual Defendants' knowledge under Delaware law, Plaintiffs need only to allege "sufficient well-pleaded facts from which it can reasonably be inferred that this 'something' was knowable and that the defendant was in a position to know it." *Iotex Commc'ns, Inc. v. Defries*, No. 15817, 1998 WL 914265, at *4 (Del. Ch. Dec. 21, 1998); *see also Weiss*, 948 A.2d at 449.[7]

However, even if Plaintiffs' Complaint does not give rise to the conclusion that the Individual Defendants' consciously disregarded their fiduciary duties, the Complaint – at the very least – sufficiently pleads that the Individual Defendants failed to monitor and control the Company's Lab Services business and adequately account for its bad debt expense, thereby unnecessarily exposing Celera to excess risk, losses, and write downs, and violated GAAP. ¶¶10-

---

[6] Note that *South Ferry* was a securities class action where plaintiffs were subject to the "heightened pleading standard[s]" of the Private Securities Litigation Reform Act ("PSLRA"). *Id.* at 783. The PSLRA indisputably does not apply to this action.

[7] This pleading inference is simply one permutation of the well-established principle that in ruling on a motion to dismiss, the court must accept all of the complaint's factual allegations as true, and must draw all reasonable inferences in favor of a plaintiff as the nonmoving party. *See In re New Valley Corp.*, No. 17649, 2001 WL 50212, at *4 (Del. Ch. Jan. 11, 2001); *In re Cendant Corp. Derivative Action Litig.*, 189 F.R.D. 117, 127 (D.N.J. 1999). Moreover, as the court in *Biopure* stated, "[a]rgument over whether the particular officer and director defendants in this case were sufficiently 'inside' to be deemed to have had knowledge is factual, and can be made at a later stage of this litigation." 424 F. Supp. 2d at 308.

PLAINTIFFS' OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED VERIFIED COMPLAINT    CASE NO. CV 10-02935 JW

14, 70-80.   Such failure of oversight also states a claim for fiduciary duty under Delaware law.  As

recently summarized by the Court in *Countrywide*, 554, F. Supp. 2d at 1081-82, applying Delaware

law:

> A director is liable for "failure of oversight" type claims where he demonstrates a
> "lack of good faith as evidenced by a sustained or systematic failure … to exercise
> reasonable oversight," or an intentional failure "to act in the face of a known duty to
> act, demonstrating a conscious disregard for his duties."

*Id*.   Plaintiffs have certainly met this burden by alleging that defendants Ordonez, Jung, and

DeBlasi (all of whom were senior officers of the Company), were directly involved in the

Company's financial reporting practices, and who also made false and misleading statements. ¶¶8-

9, 23-25, 33, 53-56, 58-63, 68.  Similarly, because Celera's Lab Services segment is the primary

source of revenue for Celera, each of the other Individual Defendants – as directors of the

Company – would have known or at least been apprised of the Company's operations and finances

related to its Lab Services segment, including the ongoing problems with billing and collection

practices through their access to and review of internal corporate documents, conversations and

connections with other corporate officers and directors, attendance at management and/or Board

meetings.  ¶36.  Further, the directors are charged with ensuring compliance with all applicable

legal and regulatory requirements of Celera's business, and therefore allowed the conduct

underlying the alleged securities violations to occur, causing severe damage to Celera.  ¶38.

   In addition, defendants Ayers, Green, Naughton, and Roe, as members of Celera's Audit

and Finance Committee, owed specific duties to Celera to review the Company's internal controls,

earnings press releases, guidance, quarterly and annual financial statements.  ¶40.  Thus, for more

than a year, the Audit and Finance Committee whose job was to "oversee the accounting and

financial reporting processes of the Company and the audits of the financial statements of the

Company," together with the entire Board, failed to monitor the Lab Services segment's billing and

collection practice, its bad debt expense, and failed to take proper steps to cure these deficiencies

thereby exposing Celera to excessive losses and write-downs.  *Id.*  Such a "'sustained and

systematic failure of the board to exercise oversight'" subjects the Individual Defendants to liability

1   for breach of "the duty of care, the duty of loyalty, and the duty of good faith."  *In re Abbott Labs.*

2   *Derivative S'Holders Litig.*, 325 F.3d 795, 808-09 (7th Cir. 2003).

3          Here, Plaintiffs have alleged sufficient facts whereby the Court could either find on the face

4   of the Complaint, or by reasonable inference, that each of the Individual Defendants' was in a

5   position to know of the actual financial health and billing and collection practices of Celera's

6   largest revenue-producing business segment, despite their statements to the contrary.  Thus, the

7   Individual Defendants' conduct clearly implicates not only the duty of due care, but also the duties

8   of loyalty and good faith.  The Individual Defendants' attempts to portray Plaintiffs allegations as

9   conclusory, and their assertions to the contrary, are not only legally untenable, but require the Court

10  to suspend common sense and conclude that sophisticated officers and directors, the vast majority

11  of whom have extensive experience in finance, knew nothing about the actual fiscal health of

12  Celera's Lab Services business, and the actual amount of Celera's bad debt expense, which at one

13  time comprised 60% of its revenues and was essential to Celera's growth and continued stability.

14  *Iotex*, 1998 WL 914265, at *4; *Weiss,* 948 A.2d at 449; ¶¶4, 23-32, 74, 99.  Thus, whether by

15  conscious action or unconsidered inaction, the Individual Defendants breached their fiduciary

16  duties to Celera and its shareholders, and Plaintiffs' respectfully submit the Individual Defendants'

17  must be held accountable for such conduct.

18          In addition, the Individual Defendants' attempt to use Celera's certificate of incorporation as

19  a shield against its liability for breach of fiduciary duty is also unavailing.  Delaware law is clear on

20  this issue – pursuant to Title 8, section 102(b)(7) of the Delaware Code Annotated ("Section 102"),

21  a corporation may exempt its directors from liability for violations of the duty of due care, but ***not***

22  for violations of the duties of loyalty and good faith.  8 Del. C. Section 102; *Pereira v. Cogan*, 294

23  B.R. 449, 534 (S.D.N.Y. 2003); *Emerald Partners v. Berlin*, 726 A.2d 1215, 1223 (Del. 1999).

24  Thus, if Section 102 is to be considered at this stage – which, as discussed below, it should not – it

25  will support a motion to dismiss **only** where ***the sole conceivable basis of liability*** is a violation of

26  the duty of care for damages.  *Emerald Partners*, 726 A.2d at 1225-27.  Here, Plaintiffs have

27  alleged that the Individual Defendants' misconduct clearly implicates not only the duty of due care,

28

- 13 -

but *also* the duties of loyalty and good faith.  Hence, the duty of care is not the sole conceivable basis of liability under Plaintiffs' well-plead allegations.  *Abbott Labs*, 325 F.3d at 808 (failure to monitor implicates "the duty of care, the duty of loyalty, and the duty of good faith."); *Malone*, 722 A.2d at 10-11 (directors' dissemination of inaccurate information implicates duties of loyalty and good faith).  Consequently, any purported exculpatory provision cannot immunize the Individual Defendants from liability for Plaintiffs' claims arising out of the Individual Defendants' duties of loyalty and good faith, particularly at this stage of the proceedings, where Celera's Certificate of Incorporation was not cited in the Complaint and is not properly before the Court at this time. Thus, its purported language is an affirmative defense not properly considered at this stage of the litigation.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Tower Air*, 416 F.3d at 242 ("[T]he protection of an exculpatory charter provision appears to be in the nature of an affirmative defense. As we have said, affirmative defenses generally will not form the basis for dismissal under Rule 12(b)(6).").

### 2.        Plaintiffs' Sufficiently Plead a Cause of Action for Unjust Enrichment

Unjust enrichment is a judicially created remedy designed to avoid benefit to one to the unfair detriment of another.  *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999) ("'Unjust enrichment is defined as '"'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'"'"). Unjust enrichment occurs where there is: "(1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and impoverishment; (4) the absence of justification; and (5) the absence of a remedy at law."  *Grace v. Morgan*, No. 03C05260JEB, 2004 WL 26858, at *3 (Del. Super. Ct. Jan. 6, 2004); *see also McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1093 (9th Cir. 2003) (same).

Plaintiffs' claim for unjust enrichment is plain on the face of the Complaint.  Plaintiffs have alleged that the Individual Defendants received unjust compensation during the Relevant Time Period at the same time they were consciously or recklessly disregarding their fiduciary duties to Celera and its shareholders by subjecting the Company to SEC inquiries and violations of the

PLAINTIFFS' OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED VERIFIED COMPLAINT     CASE NO. CV 10-02935 JW

federal securities laws that are the subject of the Securities Litigation.  ¶¶23-32, 45, 79-80, 99.  The Individual Defendants were clearly unjustly enriched through the benefits (including salaries, bonuses, other compensation and/or directorial remuneration) they received during a time when they ignored or expressly approved the corporate malfeasance that caused Celera to eventually write off $20.1 million in bad debt, representing 48.6% of its revenue (four times the industry norm); take a charge of $15.7 million from its good will; and caused its market capitalization to decline by $826 million.  ¶¶10, 12-13, 61, 70, 85, 88.  *DCB Constr. Co. v. Cent. City Dev. Co.*, 965 P.2d 115, 118-19 (Colo. 1998); *see also In re Healthsouth Corp. S'holders Litig.*, 845 A.2d 1096 (Del. Ch. 2003); *Schock*, 732 A.2d at 232-33.  Accordingly, Plaintiffs have adequately pled a claim for unjust enrichment.

### C. Plaintiffs Have Adequately Alleged That the Individual Defendants Caused Damage to the Company

Plaintiffs have alleged that the Individual Defendants caused severe harm to the Company's corporate image and goodwill, as well as enormous losses to the Company's market capitalization through the breaches of their duties discussed above.  ¶¶12-13.  Courts indeed recognize these allegations as legally cognizable damages to a company.  *See Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1293 (11th Cir. 2003) (recognizing loss of market capitalization as damage to the company's profits); *In re Sunrise Sec. Litig.*, 916 F.2d 874, 886 (3d Cir. 1990) ("[D]ecreases in share value reflect decreases in the value of the company."); *Gaff v. Fed. Deposit Ins. Corp.*, 828 F.2d 1145, 1150 (6th Cir. 1987) ("[D]iminution in the value of corporate stock constitutes a direct injury … to the corporation…."); *Cendant Corp.* 189 F.R.D. at 135 ("Damage to one's business and reputation is a cognizable injury for which damages may be awarded if the underlying charges are proved.").  Plaintiffs further allege that the Individual Defendants caused Celera to incur damages in connection with the SEC inquiries and in defending the Securities Litigation resulting from the Individual Defendants' breaches of fiduciary duties to Celera and its shareholders.  ¶14.  Thus, Plaintiffs have fulfilled the requirement of harm to the corporation necessary to adequately state a claim for damages.

**V.     CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully assert that the Individual Defendants' motion to dismiss should be denied in its entirety.

DATED:  March 4, 2011

ROBBINS UMEDA LLP
MARC M UMEDA
GEORGE C. AGUILAR


_____s/George C. Aguilar_____
GEORGE C. AGUILAR

600 B Street, Suite 1900
San Diego, California 92101
Telephone:  (619) 525-3990
Facsimile:  (619) 525-3991
E-mail: mumeda@robbinsumeda.com
        gaguilar@robbinsumeda.com


GARDY & NOTIS, LLP
MARK C. GARDY
JENNIFER SARNELLI
KELLY A. NOTO
560 Sylvan Avenue
Englewood Cliffs, NJ 07632
Telephone:  (201) 567-7377
Facsimile:  (201) 567-7337
E-mail: mgardy@gardylaw.com
        jsarnelli@gardylaw.com
        knoto@gardylaw.com

Co-Lead Counsel for Plaintiffs

HAROLD B. OBSTFELD, P.C.
HAROLD B. OBSTFELD
100 Park Avenue, 20th Floor
New York, NY 10017
Telephone: (212) 696-1212
Facsimile: (212) 696-1398
E-mail: hobsd@erols.com

Counsel for Plaintiff Alan R. Kahn

- 16 -

PLAINTIFFS' OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED VERIFIED COMPLAINT     CASE NO. CV 10-02935 JW

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the Electronic Mail Notice List.  I hereby certify that I have sent notification and served a copy of the filing via U.S. mail to the following parties listed below.

**VIA U.S. MAIL**

Harold B. Obstfeld
HAROLD B. OBSTFELD, P.C.
100 Park Avenue, 20th Floor
New York, NY 10017

Mark C. Gardy
James S. Notis
Kelly A. Noto
GARDY & NOTIS, LLP
560 Sylvan Avenue
Englewood Cliffs, NJ 07632

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 4, 2011.

_____
s/ George C. Aguilar
GEORGE C. AGUILAR

584295

- 17 -

PLAINTIFFS' OPPOSITION TO THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED VERIFIED COMPLAINT    CASE NO. CV 10-02935 JW

# Mailing Information for a Case 5:10-cv-02935-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **George Carlos Aguilar**
  GAguilar@robbinsumeda.com,Notice@robbinsumeda.com

- **Mark C. Gardy**
  mgardy@gardylaw.com

- **Judson Earle Lobdell**
  jlobdell@mofo.com,mblackmer@mofo.com

- **James S. Notis**
  jnotis@gardylaw.com

- **Jennifer Sarnelli**
  jsarnelli@gardylaw.com

- **Marc M. Umeda**
  MUmeda@robbinsumeda.com,notice@robbinsumeda.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Kelly A. Noto**
Gardy & Notis LLP
560 Sylvan Avenue
Englewood Cliffs, NJ 07632

**Harold B. Obstfeld**
Harold B. Obstfeld P.C.
100 Park Avenue, 20th Floor
New York, NY 10017

**Julia M. Williams**
Robbins Umeda LLP
600 B Street
Suite 1900
San Diego, CA 92101