1  JORDAN ETH (CA SBN 121617)
   JEth@mofo.com
2  JUDSON E. LOBDELL (CA SBN 146041)
   JLobdell@mofo.com
3  DANIEL J. VECCHIO (CA SBN 253122)
   DVecchio@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street, 32nd Floor
5  San Francisco, California  94105-2482
   Telephone: 415.268.7000
6  Facsimile: 415.268.7522

7  Attorneys for Nominal Defendant
   CELERA CORPORATION

8

9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                  SAN JOSE DIVISION

13

| | |
|---|---|
| IN RE CELERA CORP. DERIVATIVE LITIG. | Case No.      10-cv-02935 JW |
| | **DERIVATIVE ACTION** |
| This Document Relates To: | **REPLY IN SUPPORT OF NOMINAL DEFENDANT CELERA CORPORATION'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED VERIFIED COMPLAINT** |
| ALL ACTIONS | |
| | Hearing Date:   April 11, 2011 |
| | Hearing Time:   9:00 a.m. |
| | Judge:              Hon. James Ware |
| | Courtroom:       8, 4th Floor |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 1

I.   PLAINTIFFS MUST ALLEGE PARTICULARIZED FACTS SUFFICIENT TO ESTABLISH THAT A MAJORITY OF THE BOARD FACES A SUBSTANTIAL LIKELIHOOD OF LIABILITY ................................................................ 1

II.  PLAINTIFFS FAIL TO ALLEGE PARTICULARIZED FACTS SUFFICIENT TO ESTABLISH THAT A MAJORITY OF THE BOARD FACES A SUBSTANTIAL LIKELIHOOD OF LIABILITY ............................................................... 2

   A.   Plaintiffs Fail To Support Their Conclusory Allegation that Celera Has Been Damaged by Any Alleged Board Misconduct .................................. 2

   B.   Plaintiffs Fail To Support Their Conclusory Allegations of Falsity with Particularized Facts ........................................................................................ 2

   C.   Plaintiffs Fail To Support Their Conclusory Allegations of Bad Faith and Disloyalty with Particularized Facts .......................................................... 3

      1.   Plaintiffs fail to plead particularized facts to support their conclusory allegations that the Directors knowingly caused Celera to make false or misleading statements ............................................. 4

      2.   Plaintiffs fail to plead particularized facts to support their *Caremark* claims .................................................................................. 7

   D.   Plaintiffs' Unjust Enrichment Allegations Do Not Establish a Substantial Likelihood of Liability ........................................................................ 15

CONCLUSION ...................................................................................................................... 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Alaska Elec. Pension Fund v. Adecco S.A.*,
   434 F. Supp. 2d 815 (S.D. Cal. 2006), *aff'd*, 256 Fed. App'x 74 (9th Cir. 2007)....................7

*Beam v. Stewart*,
   845 A.2d 1040 (Del. 2004)...........................................................................................2

*Brown v. Moll*,
   No. 09-5881, 2010 U.S. Dist. LEXIS 125132 (N.D. Cal. Nov. 12, 2010).............................14

*Cal. Pub. Emps.' Ret. Sys. v. Coulter*,
   No. Civ. A. 19191, 2002 WL 31888343 (Del. Ch. Dec. 18, 2002)..........................................1

*David B. Shaev Profit Sharing Account v. Armstrong*,
   No. 1449-N, 2006 Del. Ch. LEXIS 33 (Del. Ch. Feb. 13, 2006) ............................................9

*Desimone v. Barrows*,
   924 A.2d 908 (Del. Ch. 2007) ..................................................................................5

*Grimes v. Donald*,
   673 A.2d 1207 (Del. 1996) .................................................................................1, 2

*Guttman v. Huang*,
   823 A.2d 492 (Del. Ch. 2003) ...................................................................................8

*In re Abbot Labs. Derivative S'holder Litig.*,
   325 F.3d 795 (7th Cir. 2003) .....................................................................................4

*In re Accuray, Inc. S'holder Derivative Litig.*,
   No. 09-5580-CW, 2010 U.S. Dist. LEXIS 90068 (N.D. Cal. Aug. 31, 2010) ................*passim*

*In re Altera Corp. Deriv. Litig.*,
   No. 06-3447-JW, 2008 U.S. Dist. LEXIS 92157 (N.D. Cal. May 15, 2008)..........................6

*In re Baxter, Int'l, Inc. S'holders Litig.*,
   654 A.2d 1268 (Del. Ch. 1995) .................................................................................3

*In re Biopure Corp. Derivative Litig.*,
   424 F. Supp. 2d 305 (D. Mass. 2006).................................................................14

*In re Caremark Int'l Inc. Derivative Litig.*,
   698 A.2d 959 (Del. Ch. 1996) ...................................................................*passim*

*In re Citigroup Inc. S'holder Derivative Litig.*,
   964 A.2d 106 (Del. Ch. 2009) .................................................................*passim*

*In re Computer Scis. Corp. Derivative Litig.*,
    244 F.R.D. 580 (C.D. Cal. 2007, *aff'd sub nom.*
    *Laborers Int'l Union v. Bailey*, 310 Fed. App'x 128 (9th Cir. 2009) ...................................... 1

*In re Countrywide Fin. Corp. Derivative Litig.*,
    554 F. Supp. 2d 1044 (C.D. Cal. 2008) ............................................................................ 7, 12

*In re Finisar Corp. Derivative Litig.*,
    No. 06-7660-RMW, 2009 U.S. Dist. LEXIS 94002 (N.D. Cal. Sept. 22, 2009) ..................... 5

*In re First Capital Holdings Corp.*,
    146 B.R. 7 (Bankr. C.D. Cal. 1992) ...................................................................................... 6

*In re HealthSouth Corp. S'holders Litig.*,
    845 A.2d 1096 (Del. Ch. 2003) .......................................................................................... 15

*In re Livent, Inc. Sec. Litig.*,
    78 F. Supp. 2d 194 (S.D.N.Y. 1999) .................................................................................. 13

*In re Lukens Inc. S'holders Litig.*,
    757 A.2d 720 (Del. Ch. 1999) .............................................................................................. 4

*In re NVIDIA Corp. Sec. Litig.*,
    No. 08-4260-RS, 2010 U.S. Dist. LEXIS 114230 (N.D. Cal. Oct. 19, 2010) ......................... 7

*In re Reliance Sec. Litig.*,
    135 F. Supp. 2d 480 (D. Del. 2001) ..................................................................................... 6

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ............................................................................................... 1

*In re Veeco Instruments, Inc. Sec. Litig.*,
    434 F. Supp. 2d 267 (S.D.N.Y. 2006) ................................................................................ 13

*In re Verifone Holdings, Inc. S'holder Derivative Litig.*,
    No. 07-6347-MHP, 2009 U.S. Dist. LEXIS 44138 (N.D. Cal. May 26, 2009) ............... 6, 7, 9

*In re VeriFone Holdings, Inc. S'holder Derivative Litig.*,
    No. 07-6347-MHP, 2010 U.S. Dist. LEXIS 88105 (N.D. Cal. Aug. 26, 2010) ....................... 9

*Jones ex rel. CSK Auto Corp. v. Jenkins*,
    503 F. Supp. 2d 1325 (D. Ariz. 2007) ............................................................................... 14

*Mitzner v. Hastings*,
    No. 04-3310, 2005 WL 88966 (N.D. Cal. Jan. 14, 2005) .................................................... 13

*No. 84 Employer-Teamster Joint Council Pension Trust Fund. v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ............................................................................................. 14

*Pfeiffer v. Toll*,
    989 A.2d 683 (Del. Ch. 2010) ............................................................................ 4, 14

*Plumbers Union Local No. 12 Pension Fund v. Ambassador's Grp.*,
    717 F. Supp. 2d 1170 (E.D. Wash. 2010) ............................................................ 14

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) ...................................................................................... 1

*Ryan v. Gifford*,
    918 A.2d 341 (Del. Ch. 2007) .............................................................................. 13

*Schock v. Nash*,
    732 A.2d 217 (Del. 1999) ..................................................................................... 15

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ...................................................................... 3, 4, 8, 14

*Wood v. Baum*,
    953 A.2d 136 (Del. 2008) ............................................................................. *passim*

*Zucco Partners LLC v. Digimarc*,
    552 F.3d 981 (9th Cir. 2009) ............................................................................... 14


**OTHER AUTHORITIES**

Del. Code Ann. tit. 8, § 102(b)(7) ............................................................................ 4

Fed. R. Civ. P. 9(b) .................................................................................................. 7

Fed. R. Civ. P. 23.1 .............................................................................................. 1, 2

**INTRODUCTION**

As shown in Celera's Opening Memorandum ("OM"), Plaintiffs have not supported the conclusory allegations in their Complaint with particularized facts, as required to plead demand futility.  Rather than address Celera's arguments, Plaintiffs merely repeat these conclusory allegations in their Opposition ("Opp.").  Plaintiffs' persistent failure to identify any factual support for these allegations confirms that the Complaint should be dismissed.

**ARGUMENT**

**I.     PLAINTIFFS MUST ALLEGE PARTICULARIZED FACTS SUFFICIENT TO ESTABLISH THAT A MAJORITY OF THE BOARD FACES A SUBSTANTIAL LIKELIHOOD OF LIABILITY.**

As Celera explained, Federal Rule of Civil Procedure 23.1 establishes "stringent conditions" for bringing a derivative action.  (OM 6-8.)  Where—as here—a plaintiff has not made demand on the board, he must "plead with particularity the reasons why such demand would have been futile."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989 (9th Cir. 1999).[1]  "Conclusory allegations of facts or law not supported by allegations of specific fact may not be taken as true."  *In re Computer Scis. Corp. Derivative Litig.*, 244 F.R.D. 580, 585-86 (C.D. Cal. 2007).[2]  In their Opposition, Plaintiffs acknowledge this particularity requirement (Opp. 3-4), although, as discussed below, they make no attempt to meet it.

Under Delaware law, demand will be excused only where the particularized factual allegations "create a reasonable doubt that … the board of directors could have properly exercised its independent and disinterested judgment in responding to a demand."  *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).  Citing *Grimes v. Donald*, 673 A.2d 1207 (Del. 1996), Plaintiffs argue that reasonable doubt exists where a shareholder has a "reasonable belief" that the board is

---

[1] Internal quotation marks and citations are omitted throughout this memorandum.

[2] While Plaintiffs argue that a court may draw all "reasonable" inferences in construing a derivative complaint (Opp. 2), their own authority makes clear that a derivative plaintiff "is not entitled to rely upon conclusory allegations." *Cal. Pub. Emps.' Ret. Sys. v. Coulter*, No. Civ. A. 19191, 2002 WL 31888343, at *8 (Del. Ch. Dec. 18, 2002).

interested.  (Opp. 3 n.3.)  In *Beam v. Stewart*, 845 A.2d 1040, 1050 n.26 (Del. 2004), however, the Delaware Supreme Court rejected a similar argument, holding, "[n]othing in *Grimes* was intended to weaken the traditional, objective reasonable doubt standard to be applied to the pleading threshold."  Instead, "a reasonable doubt that a majority of directors is incapable of considering demand *should only be found where a substantial likelihood of personal liability exists*" and "the *mere threat* of personal liability … is insufficient to challenge either the independence or disinterestedness of directors."  *Wood v. Baum*, 953 A.2d 136, 141 n.11 (Del. 2008) (emphasis added).[3]

## II.   PLAINTIFFS FAIL TO ALLEGE PARTICULARIZED FACTS SUFFICIENT TO ESTABLISH THAT A MAJORITY OF THE BOARD FACES A SUBSTANTIAL LIKELIHOOD OF LIABILITY.

In its Opening Memorandum, Celera established that the Complaint fails to plead particularized facts to support its conclusory allegations that a majority of the board made false statements in bad faith, was guilty of a sustained and systematic failure of oversight, was unjustly enriched, or caused damage to Celera.  (OM Section II.A.)  While Plaintiffs acknowledge they must plead such facts (Opp. 3-4), they identify none, opting instead to parrot the conclusory allegations of their Complaint.

### A.   Plaintiffs Fail To Support Their Conclusory Allegation that Celera Has Been Damaged by Any Alleged Board Misconduct.

Celera showed that Plaintiffs have failed to demonstrate a substantial likelihood of personal liability as to any Director because the Complaint does not plead facts showing that any Director caused Celera damages.  (OM 22.)  Plaintiffs do not oppose this argument.  On this ground alone, therefore, Plaintiffs' Complaint should be dismissed.

### B.   Plaintiffs Fail To Support Their Conclusory Allegations of Falsity with Particularized Facts.

As explained in Celera's Opening Memorandum, Plaintiffs' allegations of falsity are unsupported by particularized facts, as they must be to satisfy Rule 23.1's requirements.  (OM 9-

---

[3] Plaintiffs do not challenge the Directors' independence.  Thus, Plaintiffs may excuse demand only by showing that a majority of the Directors faces a substantial likelihood of personal liability for the wrongdoing alleged in the Complaint.  (OM 7.)

15.)  The Company acknowledges that, on March 18, 2011, it restated certain of its audited

consolidated financial statements, including those covering the Relevant Time Period, because of

errors in those statements.  This does not, however, alter the conclusion that the Complaint fails to

plead the falsity of the alleged misstatements at issue in this case with the requisite particularity.

As Celera established in its Opening Memorandum, Plaintiffs' allegations of falsity are entirely

conclusory.  (OM 9-15.)  Furthermore, the Company's restatement does not implicate several

categories of statements that Plaintiffs allege were false:  (1) statements regarding the amount of

Celera's goodwill; (2) statements regarding Celera's efforts to bring business under contract; and

(3) additional statements, such as the statement by one Individual Defendant that she was

"pleased" with BHL's revenue contributions.  Plaintiffs do not seriously attempt to demonstrate

the falsity of these statements, identifying no facts in their Opposition that rendered any of these

statements false or misleading.

Moreover, as explained below, Plaintiffs fail to demonstrate—as they must—that any

Director breached his or her fiduciary duties by causing Celera to issue false statements in bad

faith.

**C.   Plaintiffs Fail To Support Their Conclusory Allegations of Bad Faith and Disloyalty with Particularized Facts.**

As Celera showed, the 102(b)(7) exculpatory provision contained in its charter insulates

the Directors from liability for breach of the duty of care.  (OM 15.)  In light of that provision,

Plaintiffs must establish that a majority of the Directors faces a substantial likelihood of liability

for "conduct that is not in good faith or a breach of the duty of loyalty."  *Stone v. Ritter*, 911 A.2d

362, 367 (Del. 2006); *In re Baxter, Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch.

1995) (plaintiffs must demonstrate "bad faith, intentional misconduct, [or a] knowing violation of

law").  As the Delaware Supreme Court recently explained, this requires "particularized facts that

demonstrate that the directors acted with scienter."  *Wood*, 953 A.2d at 141 & n.14.

Insofar as Plaintiffs are suggesting that the application of Celera's exculpatory provision

is inappropriate at the pleading stage because it is an affirmative defense (Opp. 17), this is

incorrect.  Courts—including the Delaware Supreme Court—regularly consider a company's

1   exculpatory clause when analyzing whether demand is properly excused.  *See, e.g.*, *Stone*, 911

2   A.2d at 367; *Wood*, 953 A.2d at 141.[4]

3          Plaintiffs argue they have met their burden by showing (i) that the Directors had

4   knowledge that the alleged misstatements were false or misleading, or (ii) that the Directors

5   allowed the misstatements to be made by engaging in a sustained and systematic failure of

6   oversight.  (Opp. 8.)  As demonstrated below, Plaintiffs identify no facts to support their

7   argument with respect to either showing.  (OM 15-20.)[5]

8              **1.    Plaintiffs fail to plead particularized facts to support their
                       conclusory allegations that the Directors knowingly caused
9                      Celera to make false or misleading statements.**

10         To plead a bad faith or disloyalty claim based on false statements, Plaintiffs must

11  demonstrate that the Directors "*deliberately* misinformed shareholders about the business of the

12  corporation."  *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 132 (Del. Ch. 2009).

13  In addition to alleging with particularity the falsity of the alleged misstatements, Plaintiffs must

14  plead particularized facts (i) "that reasonably suggest sufficient board involvement in the

15  preparation of the disclosures"; *and* (ii) that demonstrate that the Directors "had knowledge that

16  _____

17         [4] The thrust of Plaintiffs' argument on page seventeen of their Opposition appears to be
    that section 102(b)(7) does not apply to claims against directors for breach of the duty of loyalty
18  or actions taken in bad faith.  (Opp. 17.)  While true, this misses the point that Plaintiffs fail to
    plead any particularized facts that would support such a claim.  In *In re Abbot Labs. Derivative
19  S'holder Litig.*, 325 F.3d 795 (7th Cir. 2003), cited by Plaintiffs (Opp. 17), the court recognized
    that a 102(b)(7) provision does not insulate directors from breach of loyalty or bad faith claims,
20  but found that plaintiffs there had pled bad faith "with sufficient particularity," including
    allegations that board members had received formal certified warning letters from the FDA "over
21  a period of six years" detailing "continuing violations of federal regulations" and resulting in the
    company ultimately paying a $100 million civil fine to the FDA.  *Id.* at 810.  Similarly, despite
22  Plaintiffs' argument, *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720 (Del. Ch. 1999), does not
    hold that an exculpatory clause applies only where the "factual basis for the claim *solely*
23  implicates a violation of the duty of care."  (Opp. 17.)  Rather, *Lukens*—which was not a
    derivative case—merely states that 102(b)(7) does not immunize defendants from "adequately
24  allege[d]" violations of the duty of loyalty and actions taken not in good faith.  *Id.* at 733-34.

25         [5] Citing *Pfeiffer v. Toll*, 989 A.2d 683 (Del. Ch. 2010), Plaintiffs suggest that Director
    Ordoñez is fatally conflicted from considering a demand because she is named as a defendant in
26  the Securities Class Action.  (Opp. 4 n.5.)  First, this argument is irrelevant because it applies to
    only one of eight Directors.  Second, it is incorrect because, in *Pfeiffer*, the securities action had
27  already "survived a motion to dismiss under the rigorous standards for pleading securities fraud."
    989 A.2d at 690.  By contrast, the Securities Class Action has not survived a motion to dismiss.

28

1    [the] disclosures or omissions were false or misleading or that [the Directors] acted in bad faith in

2    not adequately informing themselves." *Id*. at 134.  While Plaintiffs acknowledge this standard

3    (Opp. 5), they fail to identify facts to support either showing in their Opposition.

4                        **a.        Plaintiffs fail to plead particularized facts to support
                                   their conclusory allegations that the Directors made the
5                                   alleged misstatements or caused them to be made.**

6            Contrary to Plaintiffs' suggestion, the Complaint does not allege "facts reasonably

7    describing the Director Defendants' involvement in the preparation of the misleading statements."

8    (Opp. 6.)  Indeed, the generic nature of Plaintiffs' allegations is illustrated by the fact that

9    Plaintiffs do not refer to the Directors by name in the Complaint, but rather as "Defendants,"

10   making it virtually impossible to ascertain individual Director involvement in any of the alleged

11   misstatements.  (*E.g.*, Compl. ¶¶ 44-45, 60.)  *See*, *e.g.*, *Desimone v. Barrows*, 924 A.2d 908, 943

12   (Del. Ch. 2007) (noting that "a derivative complaint must plead facts *specific to each director*").

13           Plaintiffs allege that certain Outside Directors executed Celera's March 25, 2009 Form

14   10-KT and June 19, 2008 Registration Statement, but provide no additional facts of Director

15   involvement.  (*E.g.*, Compl. ¶¶ 45, 52, 99.)  As Celera already established (OM 17), "execution of

16   … financial reports … is insufficient to create an inference that the directors had actual or

17   constructive notice of any illegality."  *Wood*, 953 A.2d at 142; *In re Finisar Corp. Derivative*

18   *Litig.*, No. 06-7660-RMW, 2009 U.S. Dist. LEXIS 94002, at *43 (N.D. Cal. Sept. 22, 2009)

19   ("[B]oilerplate allegations that directors signed SEC filings do not meet the particularized

20   pleading requirements for demand futility.").

21           Plaintiffs' remaining allegations consist of conclusory claims that the Directors

22   "authorized," "permitted," "approved," or "caused" the alleged misstatements.  (*E.g.*, Compl.

23   ¶¶ 5, 28, 30, 31, 45, 58, 61, 84, 91, 100(b); Opp. 7.)  These types of allegations are not

24   particularized facts demonstrating sufficient Director involvement in the preparation of the

25   alleged statements.  *Citigroup*, 964 A.2d at 133 n.88, 134 ("It is unclear from such allegations

26   how the board was actually involved in creating or approving the statements, factual details that

27   are crucial to determining whether demand … would have been excused as futile.").  Similarly,

28   Plaintiffs argue that the Audit Committee members "participated in the alleged wrongdoing" by

1    recommending to the full Board whether Celera's financial statements should be included in its

2    Form 10-KT.  (Opp. 13.)  This type of "generic allegation" that audit committee members

3    "directly participated" in wrongdoing, however, is insufficient under Delaware law.  *In re Altera*

4    *Corp. Deriv. Litig.*, No. 06-3447-JW, 2008 U.S. Dist. LEXIS 92157, at *23 (N.D. Cal. May 15,

5    2008).[6]

6                        **b.      Plaintiffs fail to plead particularized facts to support
                                   their conclusory allegations that the Directors knew the**
7                        **alleged misstatements were false.**

8              Plaintiffs argue that they need only allege "well-pleaded facts from which it can be

9    reasonably inferred that" falsity was "knowable" and that the Directors were "in a position to

10   know" Celera's statements were false.  (Opp. 8.)  This is incorrect.  As *Citigroup* makes clear,

11   liability can attach only where the "disclosure violation was made in bad faith, knowingly or

12   intentionally."  964 A.2d at 132.

13             As Celera demonstrated in its Opening Memorandum (OM 15-17), the Complaint does

14   not allege any fact—let alone with the necessary particularity—about "what the directors knew

15   about the SEC filings and other public statements before or when they were issued."  *In re*

16   *Verifone Holdings, Inc. S'holder Derivative Litig.*, No. 07-6347, 2009 U.S. Dist. LEXIS 44138, at

17   *23 (N.D. Cal. May 26, 2009).  Plaintiffs point to no internal report, conversation, meeting,

18   document, email, confidential witness, regulatory order, or anything else to demonstrate that any

19   Director knew any of the alleged misstatements were false.  Because the Complaint fails to plead

20   particularized facts showing any Director's knowledge of falsity, it should be dismissed.  *Id.*;

21   *Citigroup*, 964 A.2d at 134 (dismissing disclosure claims where plaintiffs failed to make any

22   "specific factual allegation that would allow" for "an analysis of the state of mind" of directors).[7]

23        ─────────────────
           [6] The cases cited by Plaintiffs say nothing about inferring director participation in
24   wrongdoing and are otherwise inapposite.  In *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 520
     (D. Del. 2001), the court *granted* summary judgment to outside directors on fiduciary duty claims
25   because "plaintiffs ha[d] not identified facts to support their allegations that defendants acted
     intentionally or with knowledge."  In *In re First Capital Holdings Corp.*, 146 B.R. 7, 11-13
26   (Bankr. C.D. Cal. 1992), the court did not address demand in a derivative setting but instead
     found that demand upon the board of a Chapter 11 debtor was unnecessary under bankruptcy law.

27             [7] Plaintiffs attempt to distinguish *Citigroup* on the grounds that the plaintiffs there relied
     only on "external market indicators" as red flags.  (Opp. 5 n. 7.)  Contrary to Plaintiffs' claim,
28                                                                    (Footnote continues on next page.)

Plaintiffs' main attempt to demonstrate the Directors' knowledge of falsity—and the crux of both the Opposition and the Complaint—is that the Company announced, in July 2009, that it expected to record a significant charge for bad-debt expense and impairment of goodwill in the second quarter of 2009.  (*E.g.*, Opp. 6, 12.)  In other words, according to Plaintiffs, because the Company ultimately recorded a bad-debt expense and impairment of goodwill, the Directors *must* have known that those metrics were falsely reported throughout the Relevant Time Period.  This is classic "fraud by hindsight."  Plaintiffs have provided no particularized allegations regarding the Directors' involvement in setting allowances, their involvement in the day-to-day accounting of the Company, or anything else that would suggest that the Directors knew about accounting inaccuracies.  As several courts in this Circuit have held, these types of allegations do not support even an inference of falsity.  *E.g., In re NVIDIA Corp. Sec. Litig.*, No. 08-4260-RS, 2010 U.S. Dist. LEXIS 114230, at *20-21 (N.D. Cal. Oct. 19, 2010); *Alaska Elec. Pension Fund v. Adecco S.A.*, 434 F. Supp. 2d 815 (S.D. Cal. 2006), *aff'd*, 256 Fed. App'x 74 (9th Cir. 2007).[8]  *A fortiori*, such allegations are insufficient to demonstrate that anyone—especially Directors who are not alleged to have set allowances—acted in bad faith.  *See, e.g.*, *Verifone*, 2009 U.S. Dist. LEXIS 44138, at *23-25 (restatement insufficient to support inference that directors acted in bad faith).

### 2.    Plaintiffs fail to plead particularized facts to support their *Caremark* claims.

Plaintiffs' remaining allegations—that the Directors failed adequately to inform themselves and prevent the statements from being made—are *Caremark* claims.  (OM 17 (citing *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996).)  As Celera explained (OM 17), to plead a substantial threat of liability for a *Caremark* claim, Plaintiffs must allege a

---

(Footnote continued from previous page.)

however, they—like the plaintiffs in *Citigroup*—have shown no "red flags", whether internal or external.  964 A.2d at 135.

[8] Both *NVIDIA* and *Adecco* were decided under the pleading standards of the Private Securities Litigation Reform Act and Federal Rule of Civil Procedure 9(b).  Their analysis, however, applies equally to this case, as the "standard for stating a claim under Exchange Act § 10(b) … overlaps considerably with the standard implicated in analyzing demand."  *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1056 (C.D. Cal. 2008).

1    "*sustained or systematic failure* of … the board to exercise oversight" that demonstrates a

2    "conscious disregard" of fiduciary duties.  *Stone*, 911 A.2d at 369-70, 372 (emphasis added).

3    This is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to

4    win a judgment."  *Id*. at 372 & n.40.

5          Plaintiffs concede the exacting requirements necessary to establish their *Caremark* claims

6    (Opp. 8 (reciting the "conscious disregard" standard)), but they fail to allege particularized facts

7    that come close to meeting that standard.[9]

8                        a.      **Plaintiffs fail to plead particularized facts to support
                                 their conclusory allegations that the Directors failed to**
9                                **implement an adequate system of internal controls.**

10         Plaintiffs argue that the Directors, and particularly the members of the Audit Committee,

11   allowed "an inadequate system of internal controls to continue."  (Opp. 16.)  This, however, is not

12   the standard required to successfully plead a *Caremark* claim.  As Celera established (OM 17-18),

13   Plaintiffs must demonstrate an "utter failure to attempt to assure a reasonable information and

14   reporting system exists," such as that the "company lacked an audit committee" or "that the

15   company had an audit committee that met only sporadically and devoted patently inadequate time

16   to its work."  *Guttman v. Huang*, 823 A.2d 492, 506, 507 (Del. Ch. 2003).

17         The Complaint does not contain particularized facts to support such a showing.  Indeed,

18   the Complaint itself specifically acknowledges that the Audit Committee met at least twenty

19   times in 2008 and 2009.  (Compl. ¶ 40.)  The Complaint alleges, in conclusory fashion, that the

20   members of the Audit Committee "reviewed and approved inadequate internal controls with

21   respect to Celera's financial reporting."  (*E.g.*, Compl. ¶¶ 26, 28, 30, 31.)  But the Complaint fails

22   to identify what controls were reviewed or approved or how and to what extent those controls

23

24            [9] Plaintiffs cite *Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003), for the proposition that
     they need only plead facts "detailing the precise roles that the[] directors played at the company,
25   the information that would have come to their attention in those roles, and any indication as to
     why they would have perceived the accounting irregularities."  *Id*. at 503.  Instead of articulating
26   these types of allegations as a standard, however, the court in *Guttman* described them as what
     was "[e]ntirely absent" from the complaint.  *Id*.  Indeed, in dismissing plaintiffs' complaint,
27   *Guttman* reiterated the heightened showing necessary for *Caremark* claims, *i.e.*, that "the
     directors were *conscious* of the fact that they were not doing their jobs."  *Id*. at 506.

28

1   were inadequate. The Complaint's only factual allegation that bears at all on internal controls is

2   based on the Company's own statements in May 2009 that it was "plann[ing] to replace or

3   improve legacy systems and processes that support the billing and collections function." (Compl.

4   ¶¶ 68, 87.) Far from an indication that no controls existed, however, Plaintiffs' allegation—

5   which relates to only one aspect of the Company's controls—demonstrates that the Company was

6   undertaking efforts to improve its internal controls. (Compl. ¶ 68.) *See In re Accuray, Inc.*

7   *S'holder Derivative Litig.*, No. 09-5580-CW, 2010 U.S. Dist. LEXIS 90068, at *20 (N.D. Cal.

8   Aug. 31, 2010) (rejecting *Caremark* claims in part because "Defendants did undertake efforts to

9   improve internal controls and Plaintiffs acknowledge this in their complaint").

10
11
               **b.**       **Plaintiffs fail to plead particularized facts to support their conclusory allegations that the Directors consciously ignored "red flags."**

12       Parroting the language of courts that have analyzed *Caremark* claims, Plaintiffs argue that

13   the Directors face liability for ignoring "red flags." (Opp. 8-9.) Red flags are relevant only

14   "when they are either waved in one's face or displayed so that they are visible to the careful

15   observer," *Wood*, 953 A.2d at 143, and when they put the board on "notice of serious misconduct

16   [that it] simply fail[s] to investigate," *David B. Shaev Profit Sharing Account v. Armstrong*, No.

17   1449-N, 2006 Del. Ch. LEXIS 33, at *15 (Del. Ch. Feb. 13, 2006). The Complaint contains no

18   such allegations. Plaintiffs identify no report, whistleblower, complaint, regulatory sanction, or

19   anything else that put the Directors on notice of the type of systematic criminal violations or

20   serious misconduct necessary to sustain a *Caremark* claim.

21       As Celera demonstrated (OM 19), the factual support for the allegations here is far weaker

22   than the support found inadequate to state a *Caremark* claim in *Verifone*, which included specific

23   discussions at board meetings, accounts from CWs, letters from auditors, and an understaffed and

24   inadequate accounting department. No. 07-6347-MHP, 2010 U.S. Dist. LEXIS 88105 (N.D. Cal.

25   Aug. 26, 2010). Plaintiffs ignore *Verifone*, as well as the other on-point authority cited by Celera.

26   (OM 19-20.)

27
28

As addressed below, Plaintiffs label as "red flags" various nebulous "billing issues" and financial metrics. (Opp. 8-9.) None of these arguments is supported by particularized facts. (OM 18-19.)

         **(i)**       **Plaintiffs fail to show that the alleged "billing issues" were a "red flag."**

Contrary to Plaintiffs' suggestion, the Complaint does not demonstrate—let alone with particularized facts—that the Directors had "specific knowledge" of "potential billing issues and risks associated with third-party payors, as well as patients who were receiving reimbursements from [Blue Cross] rather than money going directly to BHL." (Opp. 8-9.) Nowhere does the Complaint provide any particularized facts explaining how any Director had knowledge of these alleged "billing issues," or discussing how this information rendered Celera's accounting or public statements false. (OM 18-19.) Further, as Celera showed, the two affidavits cited in the Complaint—the *only* specific allegation anywhere regarding Blue Cross or reimbursements being sent to patients—say nothing about the extent of the alleged "billing issues" or the Directors' knowledge of these issues. (OM 18-19.)[10] Furthermore, instead of being evidence of "widespread" "billing issues," (Compl. ¶ 81), the facts taken from the affidavits were limited to *three physician practices* in Alabama, and one of the affidavits describes events well after the Relevant Time Period. (OM 18-19.) Plaintiffs dispute none of this in their Opposition.[11]

---

[10] Plaintiffs describe as "red flags" statements in April 2008 that certain patients pay little out of pocket and that most "out-of-network private reimbursement" comes from "large insurance companies." (Opp. 9.) This makes no sense. The statements were not made by any Outside Director, and they say nothing about the Directors' knowledge of Plaintiffs' allegations. Indeed, many of the paragraphs in the Complaint to which Plaintiffs cite as so-called "red flags" (Opp. 8, 12) are not "facts," but instead are the alleged misstatements for which Plaintiffs are seeking to attach Director liability. (Compl. ¶¶ 61-63, 67-68, 53-56, 58-63.)

[11] At other points, Plaintiffs argue, without support or citation, that they "have adequately alleged the numerous facts known by Defendants and inferences, whereby the earnings guidance and Defendants' repeated assurances were false and misleading." (Opp. 15.) They fail to identify what those "numerous facts" were, how they rendered Celera's guidance false, or how the Directors were aware of these "facts" or their impact on Celera's guidance.

### (ii)     Plaintiffs fail to show that the SEC comment letters were a "red flag."

Plaintiffs again argue that certain Directors had "knowledge of Celera's risk exposure," citing the removal of a risk factor from a draft of the company's registration statement through the SEC comment letter process.  (Opp. 10.)  Celera already explained, however, that this allegation is irrelevant because, among other things, Plaintiffs do not allege Outside Director involvement.  (OM 18.)  Plaintiffs fail to address this in their Opposition.

Incredibly, Plaintiffs now argue that three Directors—Ordoñez, Ayers, and Bélingard— "were aware of the risk factors, related to Celera's billing procedures, as shown by their signatures" on the Registration statements.  (Opp. 10.)  In effect, Plaintiffs argue that the risk factors Celera *publicly disclosed* in two separate SEC filings were "red flags" of which the three Directors who signed the statements were aware.  This argument contradicts Plaintiffs' argument that the Directors acted in bad faith by failing to "publicly acknowledg[e]" these red flags.  (Opp. 12.)[12]  Furthermore, Plaintiffs say nothing about how or whether these risk factors impacted Celera or made any of the alleged misstatements false.

### (iii)     Plaintiffs fail to show that Celera's financial metrics were "red flags."

Plaintiffs repeatedly argue that Celera's increased allowances and write-off in July 2009 "demonstrate the Director Defendants were aware of the uncollectability of BHL's accounts receivable."  (Compl. ¶¶ 84-85; Opp. 9.)  Here again, Plaintiffs rely on a pure "fraud by hindsight" theory.  An increase in metrics *at the end* of the Relevant Time Period says nothing about what information was available to the Directors when the alleged misstatements were made.  While Plaintiffs now argue that "Celera's bad debt expense was more than four times that of its peers throughout the Relevant Period" (Opp. 9), this is a misrepresentation of the Complaint, which alleges that Celera's percentage of bad debt expense to revenue was higher

---

[12] Contrary to Plaintiffs' arguments (Opp. 9, 12), both the Complaint and Celera's Opening Memorandum make clear that Celera did "publicly acknowledge" many of these supposed "red flags" throughout the Relevant Time Period.  (*E.g.*, Compl. ¶ 62 (discussing DSO and stating that "we have exposure to changing an inconsistent payment pattern from non-contracted payers and patients"); OM 11 n.10.)

1   than its peers as announced *after* the Relevant Time Period.  (Compl. ¶ 85.)  Indeed, the

2   Complaint itself acknowledges that Celera's bad debt expense announced in May 2009—far from

3   being a "red flag"—was "a percentage still within industry norms."  (Compl. ¶ 8.)

4        Further, while Plaintiffs now point to the company's "reported" DSO as a red flag, the

5   only references to DSO in the Complaint are from the public statements of the Company in

6   February and May 2009.  (Compl. ¶¶ 62, 67, 68.)  The fact that Celera's disclosure of its DSO in

7   some of the very same SEC filings that contained the alleged GAAP violations undermines any

8   inference of bad faith.  It makes no sense that a company seeking to conceal bad debt through

9   accounting fraud would *reveal* the very same bad debt in the very same filings.  Moreover,

10  Plaintiffs do not allege how the DSO numbers contradicted any alleged misstatement.  *See*, *e.g.*,

11  *Accuray*, 2010 U.S. Dist. LEXIS 90068 at *19 (no demand futility where "there are no allegations

12  that internal company metrics or information discussed at the Board level contradicted any of

13  Defendants' statements").  Finally, Plaintiffs fail to allege—as they must under *Caremark*—that

14  the Directors consciously ignored the reported DSO.  (Compl. ¶ 69.)

15       Plaintiffs rely heavily on *In re Countrywide Financial Corp. Derivative Litigation*, 554 F.

16  Supp. 2d 1044 (C.D. Cal. 2008), but that case only confirms the inadequacy of the allegations

17  here.  Unlike here, the *Countrywide* complaint included allegations from fourteen Confidential

18  Witnesses—including compliance auditors and several former vice presidents and executives—as

19  well as allegations of the directors' insider trading, netting $148 million just months before the

20  stock dropped 90%.  *Id*. at 1058.  Further, the two red flags relied upon in that case and identified

21  by Plaintiffs here—negative amortization and delinquencies—increased by over *20,000 times* and

22  by a *factor of six*, respectively, during the relevant period.  *Id*. at 1061-62.  Finally, when

23  presented with the same "red flag" that Plaintiffs here advance—an increase in a reserve at the

24  end of the period—the court in *Countrywide* specifically concluded that it *did not* support a

25  showing of falsity *or* scienter.  *Id*. at 1069-70.[13]

---

26       [13] Indeed, the court in *Countrywide* specifically distinguished the facts of that case from other cases that would not support a finding of liability that—like the one here— "concern[] the

27  board's failure to properly oversee specific accounting practices."  554 F. Supp. 2d at 1082 n.42.

28

1

**c.      Plaintiffs' Audit Committee allegations contribute nothing.**

Plaintiffs suggest that the members of the Audit Committee had "heightened duties to know of the[] red flags," and that, coupled with their responsibilities "to ensure the accuracy of Celera's financial statements," they are "presumed to be liable" for the alleged misstatements about Celera's financial condition.  (Opp. 6, 7, 12-16.)  This is incorrect, as demonstrated by Plaintiffs' own authority.[14]

Simply pleading that committee members had responsibilities related to reviewing or overseeing financial statements or other aspects of a business does not "change the standard of director liability …, which requires a showing of bad faith."  *Citigroup*, 964 A.2d at 128 n.63, 135.  As Celera explained in its Opening Memorandum (OM 20 n.16 (citing cases)), Plaintiffs' approach here—predicating demand futility on nothing more than committee membership—is "contrary to well-settled Delaware law."  *Wood*, 953 A.2d at 142.

Plaintiffs also misread the Audit Committee Charter, which makes clear that the Committee's responsibilities "are to *oversee* the accounting and financial reporting processes of the Company"—not ensuring their accuracy.  (Compl. ¶ 40 (emphasis added).)[15]  In any event, "liability is not measured by the aspirational standards established by … internal documents."  *Accuray*, 2010 U.S. Dist. LEXIS 90068, at *21-22.

---

[14] In both *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194 (S.D.N.Y. 1999), and *Mitzner v. Hastings*, No. 04-3310, 2005 WL 88966 (N.D. Cal. Jan. 14, 2005), the courts *dismissed* claims against the outside directors specifically because plaintiffs failed to allege with particularity that the directors were aware of any wrongdoing.  In *Ryan v. Gifford*, 918 A.2d 341, 354-55 (Del. Ch. 2007), far from "presuming" liability on the basis of committee membership, the court found that plaintiffs had adequately pled demand futility where they identified each of the stock option grants they sought to challenge and the directors who approved or received them, and further recognized that backdating options "qualifies as one of those rare cases [in which] a transaction may be so egregious on its face that board approval cannot meet the test of business judgment." Similarly, in *In re Veeco Instruments, Inc. Sec. Litig.*, 434 F. Supp. 2d 267 (S.D.N.Y. 2006), the company had conducted an internal investigation revealing that fraud had occurred, and the court specifically found that the audit committee members "conscientiously permitted a known violation of law by the corporation to occur," by, among other things, failing to respond to complaints by whistleblowers and "completely disregarding" an internal investigation revealing repeated violations.  *Id.* at 277-78.

[15] In this regard, under Delaware law, the Directors "are fully protected in relying in good faith on the reports of officers and experts."  *Citigroup*, 964 A.2d at 134 (quoting Del. Ann. tit. 8 § 141(e)).

d.      **Plaintiffs' "core operations" argument is without merit.**

Lacking *Caremark* red flags, Plaintiffs argue that knowledge of BHL's accounts

receivable must be imputed to the Directors because these accounts are somehow "related to a

core business of Celera." (Opp. 10.)  This "core operations" theory is directly contrary to

*Caremark*, which requires particularized facts that show "the directors *knew* that they were not

discharging their fiduciary obligations."  *Stone*, 911 A.2d at 370 (emphasis added).[16]

Accordingly, "in derivative actions, courts have repeatedly held that a plaintiff must allege more

than that Directors should have known or must have known about matters relating to the

corporation's core business." *Accuray*, 2010 U.S. Dist. LEXIS 90068, at *18 (rejecting "core

operations" claim); *Brown v. Moll*, No. 09-5881, 2010 U.S. Dist. LEXIS 125132, at *6-11 (N.D.

Cal. Nov. 12, 2010) (same); *Jones ex rel. CSK Auto Corp. v. Jenkins*, 503 F. Supp. 2d 1325, 1337

(D. Ariz. 2007) (same).

Even if the core operations inference applicable in securities class action cases did apply

here, Plaintiffs' reliance on it would be misplaced.  Nowhere does the Complaint show that the

Directors were, as *Zucco Partners LLC v. Digimarc*, 552 F.3d 981 (9th Cir. 2009), requires,

"involved in every detail" of setting allowances for BHL receivables.  *Id*. at 1000.  Nor was the

alleged understatement of allowances "patently obvious" from the operations of the company.  *Id*.

at 1001.[17]

---

[16] Plaintiffs' approach here—premised upon "red flags" about which the Directors *should have known*—cannot be squared with applicable Delaware law.  "[R]ed flags are only useful when they are either waved in one's face or displayed so that they are visible to the careful observer."  *Wood v. Baum*, 953 A.2d at 143.

[17] The cases cited by Plaintiffs do not alter this analysis.  Indeed, in *Plumbers Union Local No. 12 Pension Fund v. Ambassador's Grp.*, 717 F. Supp. 2d 1170 (E.D. Wash. 2010), a securities action under the PSLRA, the court specifically stated that "[w]hen representing the sole basis for scienter, the 'core operations' inference is *insufficient*." *Id*. at 1179 (emphasis added).  In *Pfeiffer v. Toll*, 989 A.2d 683 (Del. Ch. 2010) the court, addressing this issue in the context of insider trading claims, specifically distinguished its analysis from the demand futility analysis, acknowledging that it was being decided under the less stringent, "plaintiff friendly 12(b)(6) standard." *Id*. at 692 .  In *No. 84 Employer-Teamster Joint Council Pension Trust Fund. v. Am. W. Holding Corp.*, 320 F.3d 920, 943-44 (9th Cir. 2003), which was a securities action under the PSLRA, the court imputed knowledge where the airline sustained the largest FAA fine in history.  Similarly, in *In re Biopure Corp. Derivative Litig.*, 424 F. Supp. 2d 305 (D. Mass. 2006), the court imputed knowledge that the FDA had placed a clinical hold on the company's principal drug, a fact that placed the company's primary product in "jeopardy."  *Id*. at 307-08.

**D.      Plaintiffs' Unjust Enrichment Allegations Do Not Establish a Substantial Likelihood of Liability.**

As set forth in Celera's Opening Memorandum, Plaintiffs' unjust enrichment claim does not establish a substantial likelihood of liability as to any Director because Plaintiffs (i) fail to demonstrate the "unlawful conduct" underlying their theory of unjust enrichment; and (ii) fail to explain how the alleged payment was unjust, or to the detriment of Celera.  (OM 20-21.)

Plaintiffs do not even attempt to demonstrate that the compensation received by the Directors was disproportionate to the value of their services; instead Plaintiffs repeat the conclusory allegations of their Complaint.  (Opp. 16.)  Pleading ordinary director compensation, which is all the Complaint does (Compl. ¶¶ 23, 26-32), is insufficient to plead a substantial likelihood of liability for an unjust enrichment claim.  *See*, *e.g.*, *Accuray*, 2010 U.S. Dist. LEXIS 90068, at *40-41.[18]

## CONCLUSION

For the reasons set forth above and in Celera's Opening Memorandum, Celera respectfully requests that the Court dismiss Plaintiffs' Complaint.

Dated: March 21, 2011

JORDAN ETH
JUDSON E. LOBDELL
DANIEL J. VECCHIO
MORRISON & FOERSTER LLP


By:      /s/Judson E. Lobdell
        JUDSON E. LOBDELL

Attorneys for Nominal Defendant
CELERA CORPORATION

---

[18] The cases cited by Plaintiffs are inapposite.  *Schock v. Nash*, 732 A.2d 217, 232-33 (Del. 1999) (decided in the context of a durable power-of-attorney suit where illegally-obtained funds were gifted after a court had ordered that the assets be returned); *In re HealthSouth Corp. S'holders Litig.*, 845 A.2d 1096, 1105 (Del. Ch. 2003) (involving a stock buyback transaction where CEO was aware of inflated stock price).